DLA PIPER LLP (US)
Michael D. Hynes (mh5086)
Carrie S. Parikh (cd5651)
*michael.hynes@dlapiper.com*
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500
*Attorneys for Plaintiff*

------------------------------------------------------- :
COGNIZANT TECHNOLOGY SOLUTIONS :   UNITED STATES DISTRICT COURT
U.S. CORP.,   :   DISTRICT OF NEW JERSEY
  :
  :
     Plaintiff,   :
  :   CIVIL ACTION NO.
        -vs-   :
  :
PEPPERWEED CONSULTING, LLC,   :
AMERISERV FINANCIAL BANK, and   :     **COMPLAINT**
WELLS FARGO BANK, N.A.   :
  :
     Defendants.   :
------------------------------------------------------- :


     Cognizant Technology Solutions U.S. Corp. ("Cognizant"), by its attorneys, and

as and for its Complaint for Injunctive Relief, Declaratory Relief, Indemnification and

Damages against Defendants, Pepperweed Consulting LLC ("Pepperweed") and

Ameriserv Financial Bank ("Ameriserv") states as follows:

## INTRODUCTION

     1.      Pursuant to an Asset Purchase and an Escrow Agreement Cognizant is

owed over $793,843.74 – Accounts Receivable and Accrued Compensation Entitlements

– more than half of which is being held in an escrow account. Plaintiff Cognizant seeks

the release of escrowed funds being wrongfully withheld from it as a result of meritless

"objections" presented to the escrow agent by Defendants Pepperweed and Ameriserv for

the sole purpose of preventing the timely and proper release of such funds. Cognizant brings this action for specific performance, injunctive relief, declaratory relief, indemnification and damages resulting from Defendants' improper conduct.

## THE PARTIES

2.     Plaintiff, Cognizant Technology Solutions U.S. Corp., is a Delaware Corporation with a principle place of business located at 500 Frank W Burr Boulevard, Teaneck, New Jersey 07666-6821. Cognizant is a leading provider of information technology, consulting, and business process outsourcing services.

3.     Defendant, Pepperweed Consulting LLC, is an Indiana limited liability company with a principle place of business located at 9465 Counselors Row, Indianapolis, Indiana 46240-3817. Pepperweed is a provider of advisor consulting services, technology services, support services and products.

4.     Defendant, Ameriserv Financial Bank, is a national banking association headquartered at 216 Franklin Street, Johnstown, Pennsylvania 15907-0520. On or about October 4, 2006, Ameriserv and Pepperweed entered into a loan agreement under which Ameriserv was owed from Pepperweed an outstanding principle balance of not less than $5,978,000 (the "Pepperweed/Ameriserv Loan").

5.     Interested-Party, Wells Fargo Bank, N.A. ("Wells Fargo"), is a national and international banking association headquartered in Minneapolis, Minnesota. Wells Fargo serves as the Escrow Agent under the Escrow Agreement at issue in this dispute. Wells Fargo is named as an interested-party to this lawsuit for the sole and exclusive reason that Wells Fargo's interests may be impacted in the event the Court grants the relief sought herein. Plaintiff is not taking an adverse position against Wells Fargo.

## JURISDICTION AND VENUE

6.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this controversy is between citizens of different States, and the sum or value of the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(c) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

8.      Venue is also proper pursuant to 28 U.S.C. § 1391(c) because the parties have agreed to exclusive venue in New Jersey for litigation of disputes under the Asset Purchase Agreement dated September 3, 2009 by and between Cognizant Technology Solutions U.S. Corporation ("Cognizant"), Pepperweed Consulting, LLC ("Pepperweed") and M Capital Ventures, LLC, Patrick B. Stewart and Raymond E. Ramey (the "APA"). (A true and correct copy of the APA is attached hereto as Exhibit A).

9.      Specifically, Paragraph 8.13 of the APA states that:

> Each party (a) submits to the jurisdiction of any state or federal court sitting in New Jersey in any action or proceeding arising out of or relating to this Agreement or the Ancillary Agreements, (b) agrees that all claims in respect of such action or proceeding may be heard and determined in any such court, (c) waives any claim of inconvenient forum or other challenge to venue in such court, (d) agrees not to bring any action or proceeding arising out of or relating to this Agreement or the Ancillary Agreements in any other court and (e) waives any right it may have to a trial by jury with respect to any action or proceeding arising out of or relating to this Agreement or the Ancillary Agreements. Each party agrees to accept service of any summons, complaint or other initial pleading made in the manner provided for the giving of notices in Section 8.8; provided, that nothing in this Section 8.13 shall affect the right of any party to serve such summons, complaint or other initial pleading in any other manner permitted by Law. (Exhibit A, APA at ¶ 8.13).

10.     On September 3, 2009 the parties also entered into an Escrow Agreement

(the "Escrow Agreement") and have, as part of the Escrow Agreement, agreed to exclusive venue in New Jersey for litigation of disputes. (A true and correct copy of the Escrow Agreement is attached hereto as Exhibit B).

11.     Specifically, Paragraph 18 of the Escrow Agreement provides that:

> Each of the Parties hereby irrevocably and unconditionally submits to the jurisdiction of any state court of the State of New Jersey and any federal court sitting in the State of New Jersey and irrevocably agrees that all actions or proceedings arising out of or related to this Agreement shall be litigated exclusively in such courts.  Each of the Parties agrees not to commence any legal proceedings related hereto except in such courts.  Each of the Parties hereby irrevocably waives any objection which he or it may now or hereafter have to the laying of venue of any such proceeding in any such court and hereby irrevocably waives and agrees not to plead or claim that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum. (Exhibit A, APA at ¶ 18).

## FACTUAL BACKGROUND

### The Asset Purchase Agreement

12.     On September 3, 2009, Cognizant and Pepperweed entered into a series of agreements whereby Cognizant purchased the operations and substantially all of the assets of Pepperweed Advisors, a division of Pepperweed (the "Business").

13.     On September 3, 2009, Cognizant, Pepperweed, M Capital Ventures, LLC, Patrick B. Stewart and Raymond E. Ramey (Stewart and Ramey are collectively referred to herein as the "Members") entered into the APA that, *inter alia*:

> "contemplate[d] a taxable transaction in which [Cognizant] [would] purchase the operations and substantially all of the related assets and assume certain specified liabilities of the Business (sometimes referred to as Pepperweed Advisors). (Exhibit A, APA).

14.     Pursuant to the terms of the APA and Escrow Agreement, Cognizant

4

delivered $450,000 (the "Escrow Funds") to the escrow agent, Wells Fargo Bank, N.A. (the "Escrow Agent").

15.     One of the fundamental objectives of the APA, post-closing, was to acquire the operations of the Business while minimizing the disruption to the Business' customers. Toward that end, certain Business related services previously provided by Pepperweed to the customers, pre-closing, were to continue to be provided by Cognizant, post-closing and, thereafter invoiced by Pepperweed.

16.     In an effort to minimize the operational disruption to its new transitioned customers, Cognizant agreed Pepperwood would continue to send invoices to those customers for a short period of time while the transition was made.

17.     For the same reason, Cognizant agreed that its transitioned customers would continue to make payments to Pepperweed even though those payments belonged to Cognizant.

18.     All amounts received by Pepperweed from these customers for the services provided by Cognizant are referred to as "Accounts Receivable," which was to be promptly forwarded to Cognizant.

19.     Section 5.10(c) of the APA specifically provides that:

> to forward promptly to [Cognizant] any monies, checks or instruments received by the Seller with respect to any accounts receivable and prepaid amounts arising from the operation of the Business after the Closing Date; provided, however, if the Buyer becomes aware that any monies, checks or instruments have been received by the Seller and does not receive such monies, checks or instruments within 45 days of when received by the Seller, the Buyer shall be entitled to be paid from any Escrow Amount pursuant to the terms of the Escrow Agreement. (Exhibit A, APA at ¶ 5.10(c)).

20.     The APA further provides that, in the event of Pepperweed's breach of its

contractual obligations under the APA, Cognizant would be entitled to an order of specific performance. (*See* Exhibit A, APA at ¶ 8.14.)

21.    In particular, Section 8.14 of the APA states that:

> Each party acknowledges and agrees that the other parties would be damaged irreparably in the event any of the provisions of this Agreement (including Sections 5.3, 5.4 and 5.5) are not performed in accordance with their specific terms or otherwise are breached. Accordingly, each party agrees that the other parties shall be entitled to an injunction or other equitable relief to prevent breaches of the provisions of this Agreement and to enforce specifically this Agreement and the terms and provisions hereof in any action instituted in any court of the United States or any state thereof having jurisdiction over the parties and the matter, in addition to any other remedy to which it may be entitled, at Law or in Equity. (Exhibit A, APA at ¶ 8.14).

22.    The APA is governed by the internal laws of the state of New Jersey. (*See* Exhibit A, APA at ¶ 8.9.)

**The Escrow Agreement**

23.    On September 3, 2009, the Escrow Agent, Cognizant, Pepperweed, M Capital Ventures, LLC, and the Members entered into the Escrow Agreement which is attached to this Complaint as Exhibit B.

24.    Section 4(a) of the Escrow Agreement, provides that:

> If [Cognizant] becomes aware that any monies, checks or instruments have been received by [Pepperweed] with respect to any accounts receivable and prepaid amounts arising from the operation of the Business after the Closing Date (the "Accounts Receivable") and such Accounts Receivable are not forwarded to [Cognizant] within forty-five (45) days of the date such Accounts Receivable are received by [Pepperweed], [Cognizant] shall deliver to the Escrow Agent (with a copy to the Seller) a written instruction that on the date that is five (5) business days following receipt of such instruction (the "Payment Date"), the Escrow Agent shall promptly release from the Escrow Funds to [Cognizant's] account specified in Exhibit B, immediately available funds in an amount equal to the

Accounts Receivable plus interest earned thereon from the date such Accounts Receivable were received by [Pepperweed] through the date of payment (or, to the extent that the amount held in escrow on the Payment Date is less than the Accounts Receivable plus interest, the Escrow Agent shall release and deliver to or at the direction of [Cognizant] the full amount then held in escrow on such date). [Pepperweed] shall not have the right to dispute the release of the Accounts Receivable by the Escrow Agent. (Exhibit B, Escrow Agreement at ¶ 4(a)).

25.     Under the terms of the Escrow Agreement, if Cognizant becomes aware of outstanding Accounts Receivable owed to it, Cognizant may "deliver to the Escrow Agent (with a copy to [Pepperweed]) a written instruction" to release the Escrow Funds within five (5) days from such notice. (Exhibit B, Escrow Agreement ¶ 4(a)).

26.     If Cognizant made such a demand, the Escrow Agreement provides that **"[Pepperweed] shall not have the right to dispute the release of the Accounts Receivable by the Escrow Agent."** (Exhibit B, Escrow Agreement ¶ 4(a))[emphasis added].

27.     The Escrow Agreement was executed in conjunction with the APA and other related transactional documents to ensure, among other things, that Cognizant would be compensated for the services it provided to the transitioned customers.

28.     The Escrow Agreement is governed by the laws of the State of New Jersey. (*See* Exhibit B, Escrow Agreement at ¶ 18).

### *The Consent and Waiver Agreement*

29.     On September 3, 2009, Pepperweed and Ameriserv executed, and Cognizant approved, a Consent and Waiver Agreement. (A true and correct copy of the Consent and Waiver Agreement is attached hereto as Exhibit C.).

30.     The Consent and Waiver Agreement states, among other things, that

7

Ameriserv will not prevent Pepperwood from providing Cognizant with any of the funds

Pepperwood received from its customers for services by Cognizant.

31.     Specifically, the Consent and Waiver Agreement states that:

> The Lender has received and reviewed a copy of the Purchase
> Agreement and the Escrow Agreement and, subject to receipt of
> the Closing Deliverables (as to which Lender acknowledges receipt
> of all but the Proceeds), hereby consents to the Transaction and
> waives compliance with respect to the Transaction by (i) the
> Borrowers with Article IV, Sections 1 and 6 of the Initial Loan
> Agreement, and (ii) Consulting with respect to the Business Loan
> Agreement, and (iii) any other provision of the Loan Agreements
> that prohibit or restrict [Pepperweed's] transfer of the Acquired
> Assets to Buyer. (Exhibit C, Consent and Waiver).

32.     In consideration for the waiver provided for in the Consent and Waiver

Agreement, Pepperweed granted Ameriserv, among other things:

> [a]n assignment of the rights of [Pepperweed] under the
> Escrow Agreement (as defined in the [APA]) to receive the
> release of the Escrow Funds (as defined in the Escrow
> Agreement) less any Outstanding Claims (as defined in the
> [APA]) *to which [Pepperweed] would otherwise be*
> *entitled upon the first anniversary of the date of the*
> *Escrow Agreement*, and to otherwise exercise only all of
> the rights of [Pepperweed] under the Escrow Agreement,
> which assignment shall be acknowledged and agreed to by
> [Cognizant] and the Escrow Agent, with such assignment
> and acknowledgements to be in form and substance
> acceptable to [Ameriserv].  (Exhibit C, Consent and Waiver
> [emphasis added]).

### The Collateral Assignment Agreement

33.     On September 3, 2009, pursuant to a Collateral Assignment Agreement

(the "Assignment Agreement") Pepperweed assigned to Ameriserv, as security for the

repayment of the Pepperweed/Ameriserv Loan:

> all of its rights, title, in and to the Escrow Amount being
> held by the Escrow Agent under the Escrow Agreement to
> be released to [Ameriserv] less any Outstanding Claims (as
> defined in the Escrow Agreement) *to which Assignor*

8

*would otherwise be entitled upon the first anniversary of the Escrow Agreement* and any Outstanding Claims, if any, required to be released to the Assignor following the resolution of such claims in accordance with the provisions of Section 5 of the Escrow Agreement…(A true and correct copy of the Assignment Agreement is attached hereto as Exhibit D [emphasis added]).

34.    As a result, pursuant to the Consent and Waiver Agreement and the Assignment Agreement, Ameriserv was granted the full interest in and the rights of Pepperweed in the Escrow Agreement, "upon the first anniversary of the Escrow Agreement." (Exhibit C, Consent and Waiver; Exhibit D, Assignment Agreement)

### The Accounts Receivable Owed To Cognizant

35.    On June 2, 2010, Raymond E. Ramey, Pepperweed's Chief Financial Officer, sent an e-mail to John Rorke of Cognizant detailing the amounts received by Pepperweed and owed to Cognizant arising from the operation of the Business after the Closing Date (the "Ramey E-Mail"). (A true and correct copy of the Ramey E-Mail is attached hereto as Exhibit E.).

36.    The Ramey Email explains that through May 10, 2010, Pepperweed had received $706,975.99 for services provided by Cognizant and that these funds belong to Cognizant.  (Exhibit E, Ramey E-Mail).

37.    The $706,975.99 referenced in the Ramey E-Mail constitute Accounts Receivable as that term is defined in Section 5.10(c) of the APA and Section 4(a) of the Escrow Agreement.

38.    Despite Cognizant's repeated demands, Pepperweed has refused to deliver or facilitate the delivery of the $706,975.99 to Cognizant as required under Section 5.10(c) of the APA.

39.    To date, Cognizant has not received the $706,975.00 due as of May 10,

2010, nor, has Cognizant received the additional $37,239.60 in Accounts Receivable received by Pepperweed since May 10, 2010.

### *The Accrued Compensation Entitlements Owed To Cognizant*

40.     Upon the Closing Date as defined in the APA, certain Pepperweed employees that were providing services associated with the Business became Cognizant employees.  These transferred employees are considered "Transferred Employees" under the APA.

41.     Section 2.18(g) of the APA provides that "Accrued Compensation Entitlements shall remain the obligation of [Pepperweed] in accordance with Section 5.2(d) hereof." (Exhibit A, APA at ¶ 2.18(g).)

42.     Section 7.1 defines Accrued Compensation Entitlements as follows:

> (i) the aggregate accrued and unpaid salary, bonus, commissions, expenses (including travel and entertainment expenses) and any other compensation entitlements of each of the Transferred Employees less (ii) any amount owed to the Seller by such Transferred Employee, as of the Closing Date and as more particularly described in the Employee List. (Exhibit A, APA at ¶ 7.1.)

43.     Similarly, Section 5.2(d) states that "[Pepperweed] shall retain liability to the Transferred Employees for any Accrued Compensation Entitlements." (Exhibit A, APA at ¶ 5.2(d)).

44.     Cognizant paid to the Transferred Employees the Accrued Compensation Entitlements as required under the APA in the amount of $49,628.15.

45.     As a result, Pepperweed is required to reimburse Cognizant $49,628.15 representing the Accrued Compensation Entitlements advanced to the Transferred Employees on Pepperweed's behalf.

46.     Therefore, as set forth in the Demand Notice, Pepperweed is obligated to

pay to Cognizant the Accrued Compensation Entitlement Payments in the amount of $49,628.15, pursuant to Section 5.2(d) and 2.18(g) of the APA.

47. Despite Cognizant's repeated demands, Pepperweed has refused to reimburse Cognizant the $49,628.15 it paid to the Transferred Employees.

### *Cognizant's Demand Notice To Release The Escrow Funds*

48. On June 7, 2010, Cognizant sent a letter to the Escrow Agent demanding the release of $744,215.59 in Accounts Receivable that Cognizant's customers paid to Pepperwood for services provided by Cognizant. (A true and correct copy of the Demand Notice is attached hereto as Exhibit F).

49. The Demand Notice states, in pertinent part that, "[c]onsitent with the Transaction Agreements, and pursuant to Section 4(a) and (b) of the Escrow Agreement, Cognizant hereby demands that the escrow agent release funds owed pursuant to the Transaction Agreement." (Exhibit F, Demand Notice).

50. Further, the Demand Notice advised the Escrow Agent and Pepperweed that $49,628.15 was due in connection with the Accrued Compensation Entitlements. (Exhibit F, Demand Notice).

51. With respect to the Accounts Receivable owed to Cognizant, the Demand Notice also advised the Escrow Agent that, "neither Pepperweed nor Ameriserv has any right to dispute the release of the Escrow Funds under Section 4(a) of the [APA]." (Exhibit F, Demand Notice).

52. The Demand Notice served as Cognizant's written demand and instruction pursuant to Section 4(a) of the Escrow Agreement and Claim notice pursuant to Section 4(b) of the Escrow Agreement, to distribute from the Escrow Funds, to Cognizant, the Accounts Receivable and Accrued Compensation Entitlements. (Exhibit F, Demand

Notice").

***Defendants' Objections To The Release of the Escrow Funds***

53.     On June 11, 2010, counsel for Ameriserv sent correspondence to the Escrow Agent, disputing the release of Escrow Funds as payment of the Accounts Receivable to Cognizant (the "Ameriserv Objection"). (A true and correct copy of the Ameriserv Objection is attached hereto as Exhibit G).

54.     The Ameriserv Objection contends, among other things that, Ameriserv has the right to object to the Demand Notice based upon the Assignment Agreement and that the Demand Notice failed "to allege that Pepperweed collected any accounts receivable arising from the operation of the Business after the Closing Date, let alone that Pepperweed collected such accounts receivable then failed to remit such collections within forty five days." (Exhibit G, Ameriserv Objection).

55.     On that same date, June 11, 2010, counsel for Pepperweed sent correspondence to the Escrow Agent, disputing the release of Escrow Funds as payment of the Accounts Receivable to Cognizant (the "Pepperweed Objection"). (A true and correct copy of the Pepperweed Objection is attached hereto as Exhibit H).

56.     In its objection, Pepperweed admitted that the Accounts Receivable are owed to Cognizant but disputed that the remaining $726,647.49 demanded by Cognizant are in fact Accounts Receivable that are required to be released without giving Pepperweed the right to dispute under Section 4(a) of the Escrow Agreement. (Exhibit H, Pepperweed Objection).

***Cognizant's June 14th Demand To Release Escrow Funds***

57.     On June 14, 2010, Cognizant sent a second letter to the Escrow Agent,

demanding that the Escrow Agent release the Escrow Funds to Cognizant (the "June 14th Demand"). (A true and correct copy of Cognizant's June 14, 2010 Demand is attached hereto as Exhibit I.)

58.     The June 14th Demand reiterated Cognizant's position with respect to the Accounts Receivable and Accrued Compensation Entitlements and again notified the Escrow Agent that "neither Pepperweed nor Ameriserv has any right to dispute the release of the Escrow Funds under Section 4(a) of the Escrow Agreement." (Exhibit I, June 14th Demand).

### The Escrow Agent Refuses To Distribute The Escrow Funds

59.     On June 14, 2010, the Escrow Agent responded in writing to the Demand Notice and the Ameriserv and Pepperweed Objections by refusing to distribute the escrow funds to Cognizant until receipt of a "final non-appealable order of a court of competent jurisdiction or a final non-appealable arbitration decision directing delivery of the Escrow Funds, or written agreement executed by each of the Parties involved in such disagreement or dispute directing delivery of the Escrow Funds." (The "Escrow Agent Response") (A true and correct copy of the Escrow Agent Response is attached hereto as Exhibit J).

60.     The Escrow Agent took this position based upon Section 15 of the Escrow Agreement, which provides:

> If any conflict, disagreement or dispute arises between , among, or involving any of the Parties concerning the meaning or validity of any provision hereunder or concerning any other matter relating to this Agreement, or the Escrow Agent is in doubt as to the action to be taken hereunder, the Escrow Agent is authorized to retain the Escrow Funds until the Escrow Agent (i) receives a final non-appealable order of a court of competent jurisdiction or

a final non-appealable arbitration decision directing delivery of the Escrow Funds, (ii) receives a written agreement executed by each of the parties involved in such disagreement or dispute directing delivery of the Escrow Funds, in which even the Escrow Agent shall be authorized to disburse the Escrow Funds in accordance with such final court order, arbitration decision, of agreement, or (iii) files an interpleader action in any court of competent jurisdiction, and upon the filing thereof, the Escrow Agent shall be relieved of all liability as to the Escrow Funds and shall be entitled to recover attorneys' fees, expenses and other costs incurred in commencing and maintain any such interpleader action. The Escrow Agent shall be entitled to act on any such agreement, court order, or arbitration decision without further question, inquiry, or consent. (Exhibit B, Escrow Agreement at ¶ 15).

61.     Inasmuch Pepperweed has conceded that it has received at least $706,975.99 through May 10, 2010, arising from the operation of the Business after the Closing Date (Exhibit E, Ramey Email) and has failed to pay to Cognizant such amounts, the Demand Notice, pursuant to Section 4(a) of the Escrow Agreement, is valid.

62.     Neither Pepperweed nor its assignees have any right to dispute the release of the Accounts Receivable by the Escrow Agent and thus the Defendants' objections are improper.

63.     Moreover, Ameriserv is not entitled to enforce any right provided to Pepperwood under the Escrow Agreement until the first anniversary of the Escrow Agreement, which is September 3, 2010.  (*See* Exhibit A, APA at ¶ 28).

64.     Moreover, although the Assignment Agreement grants Ameriserv "the right to enforce all rights of [Pepperweed] under the [APA] and the Escrow Agreement," Ameriserv is not entitled to enforce such right or require its consent to the distribution of the Escrow Funds until the first anniversary of the Escrow Agreement.  (*See* Exhibit A, APA at ¶ 28).

65.    Similarly, Section 28(iv) of the Escrow Agreement provides that:

> [Cognizant] and the Escrow Agent (iv) agree[] that no consent by [Pepperweed] to distribution of the Escrow Funds by the Escrow Agent following the first anniversary date hereof shall be effective unless accompanied by a written consent of [Ameriserv]. (Exhibit B, Escrow Agreement at ¶ 28).

66.    Ameriserv has no authority to consent or object to the release of the Escrow Fund until the first anniversary of the Escrow Agreement, on September 3, 2010.

67.    Thus, the Ameriserv Objection  -- dated June 11, 2010 -- is invalid on its face.

68.    The Acknowledgement, Consent and Agreement section of the Assignment Agreement, contains identical language to that set forth in Section 18 of the Escrow Agreement confirming Pepperweed and Ameriserv's agreement.

69.    Specifically, the Acknowledgement, Consent and Agreement Section of the Assignment Agreement provides that:

> no consent by the Assignor to distribution of amounts from the Escrow Proceeds by the Escrow Agent following the first anniversary of the Escrow Agreement shall be effective unless accompanied by a written consent of the Lender (Exhibit D, Assignment Agreement).

70.    The first anniversary of the Escrow Agreement is September 3, 2010.

71.    Thus, neither Pepperweed nor Ameriserv has any right to dispute the release of the Escrow Funds under Section 4(a) of the Escrow Agreement and their objections were designed to frustrate the clear intent of the APA and the Escrow Agreement.

72.    As a result, Pepperweed has materially breached the APA and Escrow Agreement, Ameriserv has tortiously interfered with Cognizant's contractual relationship

with Pepperweed under the APA and the Escrow Agreement, and Cognizant has suffered and continues to suffer substantial monetary damages.

**COUNT I – Declaratory Judgment (Pepperweed)**

73.     Cognizant repleads and incorporates by reference its allegations contained in Paragraphs 1-72 above as if fully set forth herein.

74.     Pursuant to the terms of the APA, Cognizant is entitled to payment of all Accounts Receivable under the APA for services rendered to customers post-closing for which Pepperweed, who did not perform any services post-closing, has received payment.

75.     As of June 7, 2010, the Accounts Receivable held by Pepperweed was $793,843.74.

76.     Pursuant to Sections 5.2(d) and 2.18(g) of the APA, Cognizant is also entitled to the Accrued Compensation Entitlements as defined in Section 7.1 of the APA.

77.     Despite Cognizant's proper and timely demands to distribute the full amount of the Escrow Funds to Cognizant as partial payment of the outstanding Accounts Receivable and Accrued Compensation Entitlements, Pepperweed and Ameriserv have wrongfully objected to the disbursement of the Escrow Funds when they have no right to do so under the terms of the APA, Escrow Agreement, the Consent and Waiver or the Assignment Agreement.

78.     Pepperweed and Ameriserv's conduct violates the express provisions of the APA, the Escrow Agreement, the Consent and Waiver Agreement and the Assignment Agreement and, as a result, Cognizant has suffered and will continue to suffer monetary damages.

79.     Accordingly, there is an actual case or controversy between Cognizant, on

16

the one hand, and Pepperweed and Ameriserv, on the other, concerning whether Cognizant is entitled to the Escrow Funds as set forth in the Demand Notice.

80.     All necessary parties are before the Court so that it can grant declaratory relief.

81.     Therefore, Cognizant it entitled to declaratory relief under 28 U.S.C. §§ 2201 and 2202.

WHEREFORE, Cognizant respectfully requests that this Court enter an order against Pepperweed and Ameriserv:

(a) declaring that the $744,215.59 amount received by Pepperweed from customers for payment for service rendered by Cognizant and associated with the Business after the Closing Date, constitute Accounts Receivable as that term is used in the APA and Escrow Agreement;

(b) declaring that Cognizant is entitled to payment of the Accounts Receivable and Accrued Compensation Entitlements (including the Escrow Funds) under Sections 5.10(c), 5.2(d) and 2.18(g) of the APA and Section 4(a) of the Escrow Agreement;

(c) declaring that neither Pepperweed nor Ameriserv is entitled, under the APA or Escrow Agreement, to object to the disbursement of the Escrow Funds to Cognizant as partial payment of Accounts Receivable owed to Cognizant;

(d) directing the Escrow Agent to release to Cognizant the Escrow Funds in their entirety, including the interest accrued thereon, pursuant to Sections 4(a) and 15 of the Escrow Agreement;

(e) declaring that the $49,628.15 paid by Cognizant to the Transferred Employees on behalf of Pepperweed constitutes Accrued Compensation Entitlements pursuant to Sections 5.2(d) and 2.18(g) of the APA;

(f) directing Pepperweed to pay to Cognizant $49,628.15 representing Accrued Compensation Entitlements under Sections 5.2(d) and 2.18(g) of the APA; and

(g) awarding Cognizant its costs, expenses, attorneys' fees, interest and such other and further relief as the Court deems just and proper.

### COUNT II – Breach of Contract (Pepperweed)

82.     Cognizant repleads and incorporates by reference its allegations contained in Paragraphs 1-81 above as if fully set forth herein.

83.     The APA and the Escrow Agreement are both valid and enforceable contractual agreements.

84.     Pursuant to the Section 5.10(c) of the APA, Pepperweed was required "to forward promptly to [Cognizant] any monies, checks or instruments received by the Seller with respect to any accounts receivable and prepaid amounts arising from the operation of the Business after the Closing Date."

85.     Similarly, pursuant to Section 4(a) of the Escrow Agreement, Cognizant is entitled to payment of all Accounts Receivable under the APA for services rendered to customers after the Closing Date from whom Pepperweed has received payment.  Section 4(a) further provides that "[**Pepperweed**] **shall not have the right to dispute the release of the Accounts Receivable by the Escrow Agent.**" [emphasis added]

86.     Further, pursuant to Sections 5.2(d) and 2.18(g) of the APA, Cognizant is entitled to the Accrued Compensation Entitlements as defined in Section 7.1 of the APA.

87.     Pepperweed has breached its contractual duties under the APA by failing "to forward promptly to [Cognizant] any monies, checks or instruments received by the Seller with respect to any accounts receivable and prepaid amounts arising from the operation of the Business after the Closing Date."   In fact, as of June 7, 2010, Pepperweed had retained at least $744,215.59 in monies received by customers for services provided by Cognizant arising from the operation of the Business after the

Closing Date.

88.     Pepperweed has also breached its contractual duties under the APA by failing to reimburse Cognizant for the $49,628.15 in Accrued Compensation Entitlements as required under Sections 5.2(d) and 2.18(g) of the APA.

89.     Additionally, Pepperweed has breached its contractual duties under the Escrow Agreement by improperly objecting to the disbursement of the Escrow Funds when it has no right under the Escrow Agreement to do so.

90.     Pepperweed's conduct constitutes a material breach of the APA and Escrow Agreement and, as a result, Cognizant has suffered and will continue to suffer damages.

91.     For its part, Cognizant has fully performed, as to all material terms, in connection with its contractual relationship with Pepperweed.

WHEREFORE, Cognizant respectfully requests that this Court enter an order against Pepperweed:

> (a) for damages, in an amount to be determined at trial, suffered by Cognizant due to Pepperweed's breach of contract; and
>
> (b) awarding Cognizant its costs, expenses, attorneys' fees, interest and such other and further relief as the Court deems just and proper.

### COUNT III -Tortious Interference with Contract (Ameriserv)

92.     Cognizant repleads and incorporates by reference its allegations contained in Paragraphs 1-91 above as if fully set forth herein.

93.     Cognizant and Pepperweed entered into two enforceable contracts, the APA and Escrow Agreement.

94.      Under those agreements Cognizant is entitled to payment of all Accounts

Receivable under the Escrow Agreement.

95.     The Escrow Agreement provides that "[Pepperweed] shall not have the right to dispute the release of the Accounts Receivable by the Escrow Agent." (Exhibit B, Escrow Agreement at ¶ 4(c).

96.     Ameriserv, an assignee under both the APA and Escrow Agreement, is and was aware of Pepperweed's contractual obligations under the APA, including its duty to pay to Cognizant all amounts received by Pepperweed from customers for service rendered by Cognizant and associated with the Business after the Closing Date.

97.     Ameriserv, as assignee under the Escrow Agreement, is and was aware of Pepperweed's contractual obligations under the APA and Escrow Agreement, which provide that Cognizant is entitled to all Accounts Receivable.

98.     Ameriserv, an assignee under the Escrow Agreement, is and was aware of Pepperweed's contractual obligations under the Escrow Agreement, which prohibits Pepperweed from disputing the release of the Escrow Funds by the Escrow Agent to satisfy the outstanding Accounts Receivable.

99.     The Ameriserv Objection, sent to the Escrow Agent disputing the release of the Escrow Funds to Cognizant, constitutes wrongful interference with the Escrow Agreement.

100.    Ameriserv's conduct, as set forth above, was willful, wanton, and malicious and/or without due regard for the rights of Cognizant.

WHEREFORE, Cognizant respectfully requests that this Court enter an order against Ameriserv:

> (a) for damages inflicted upon Cognizant due to Ameriserv's willful, wanton, malicious conduct; and

(b) awarding Cognizant its costs, expenses, attorneys' fees, interest and such other and further relief as the Court deems just and proper.

## COUNT IV – Specific Performance Indemnification and Injunctive Relief

101. Cognizant repleads and incorporates by reference its allegations contained in Paragraphs 1-100 above as if fully set forth herein.

102. Under Section 5.10(c) of the APA Pepperweed agreed to:

forward promptly to [Cognizant] any monies, checks or instruments received by the Seller with respect to any accounts receivable and prepaid amounts arising from the operation of the Business after the Closing Date; provided, however, if the Buyer becomes aware that any monies, checks or instruments have been received by the Seller and does not receive such monies, checks or instruments within 45 days of when received by the Seller, the Buyer shall be entitled to be paid from any Escrow Amount pursuant to the terms of the Escrow Agreement. (Exhibit A, APA at ¶ 5.10(c)).

103. Under Section 5.10 of the Escrow Agreement, Cognizant is entitled to the release of the all of the Escrow Funds.

104. The Escrow Agent has not released those funds to Cognizant only because of Pepperweed and Ameriserv's wrongful and unjustified objections to the release.

105. Pursuant to Section 8.14 of the APA, Cognizant is entitled to specific performance of Section 5.10 of the APA for the delivery of all amounts collected by Pepperweed that are owed to Cognizant as well as Section 4(a) of the Escrow Agreement for the release of the Escrow Funds.

106. Pepperweed's and Ameriserv's conduct, as described above, has caused Cognizant irreparable injury, in that it has failed to receive significant funds due and owing to it under the APA and Escrow Agreement and, unless enjoined, will continue to

cause irreparable injury to Cognizant including a loss of rights to the funds on the first anniversary date of the Escrow Agreement.

107.   Cognizant is entitled to injunctive relief against Pepperweed and Ameriserv to prevent them from obstructing or interfering with Cognizant's rights to the Escrow Funds.

108.   Pepperweed's and Ameriserv's conduct, as set forth above, was willful, wanton, and malicious and/or without due regard for the rights of Cognizant.

109.   No previous injunctive relief has been awarded with respect to this matter in this or any other case.

WHEREFORE, Cognizant respectfully requests that this Court enter an order against Pepperweed and Ameriserv, jointly and severally:

(a) ordering an accounting of the Escrow Funds;

(b) requiring Pepperweed and Ameriserv to instruct the Escrow Agent to release to Cognizant all of the entire Escrow Funds together with any interest accrued;

(c) preliminarily and permanently enjoining Pepperweed and Ameriserv from interfering with Cognizant's rights in and to the Escrow Funds in accordance with the APA and the Escrow Agreement; and

(d) awarding Cognizant its costs, expenses, attorneys' fees, interest and such other and further relief as the Court deems just and proper.

## COUNT V-Indemnification (Pepperweed)

110.   Cognizant repleads and incorporates by reference its allegations contained in Paragraphs 1-109 above as if fully set forth herein.

111.   Pursuant to Article 6.1(b) of the APA, Pepperweed is obligated to indemnify Cognizant for:

any failure to perform or other breach of any covenant of agreement of the Seller or any Member contained in this Agreement, any Ancillary Agreement or any agreement furnished by the Seller or any Member to the Buyer pursuant to this Agreement, including, without limitation, any Damages arising from Seller's failure to perform services pursuant to the Transition Agreement.  (Exhibit A, APA at ¶ 6.1(b))

112.    Under Section 5.10 of the Escrow Agreement, Cognizant is entitled to the release of the all of the Escrow Funds.

113.    The Escrow Agent has not released those funds to Cognizant only because of Pepperweed and Ameriserv's wrongful and unjustified objections to the release.

114.    Cognizant is entitled to indemnification for Pepperweed's failure to perform under the APA.

WHEREFORE, Cognizant respectfully requests that this Court enter an order against Pepperweed:

(a) requiring Pepperweed to indemnify Cognizant for the damages arising from Pepperweed's to perform under the APA; and

(b) awarding Cognizant its costs, expenses, attorneys' fees, interest and such other and further relief as the Court deems just and proper.

Dated:       New York, New York
             June 27, 2010

                                          s/Michael D. Hynes
                                          Michael D. Hynes(mh5086)
                                          Carrie S. Parikh (cd5651)
                                          *michael.hynes@dlapiper.com*
                                          **DLA Piper LLP (US)**
                                          1251 Avenue of the Americas
                                          New York, New York 10020-1104
                                          (212) 335-4500
                                          *Attorneys for Plaintiff*

43056078.1

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

Plaintiff, Cognizant, Technology Solutions U.S. Corp. knows of no other arbitration or lawsuit involving this matter, nor is any, to Plaintiff's knowledge contemplated and, Plaintiff knows of no other person that should be joined in this matter at this time.

Dated:          New York, New York
                June 27, 2010

                                              s/Michael D. Hynes
                                              Michael D. Hynes(mh5086)
                                              Carrie S. Parikh (cd5651)
                                              *michael.hynes@dlapiper.com*
                                              **DLA Piper LLP (US)**
                                              1251 Avenue of the Americas
                                              New York, New York 10020-1104
                                              (212) 335-4500
                                              *Attorneys for Plaintiff*

EAST\43056078.2